Good afternoon, Illinois, Illinois Appellate Court 1st District Court is now in session. The 6th division, the Honorable Justice Carl Anthony Walker presiding case number. 24-0052 Annie Lamb versus city of Chicago. And good afternoon everyone. I am just as Carl Walker. And I have here with me today, just as just as already, but Chesky and just as Michael behind me. And I'd like to have the parties who will be arguing to please introduce yourself. Council good afternoon. Good afternoon. Your honor. My name is Stephen Collins. I represent the city of Chicago. Good afternoon. This is William Gibbs on behalf of the plaintiffs, a state of lamb. Thank you and Mr. Collins and Mr. Gibbs, you both will have 20 minutes to argue. But Mr. Collins, we're going to give you anytime you want to reserve for rebuttal. If you can let us know that now, and we'll make sure that. Yes, if I could reserve 5 minutes, please. Thank you. And it's you've got it. Okay, and I'm going to ask you both to not get into the fact of the case. We know the facts. We'd rather you just go straight to your argument. So, if you could do that, we'd appreciate it very well. Thank you. May it please the court today. I would like to discuss 2 reasons why the city is entitled to a new trial. 1st, the circuit court wrongly denied the city the opportunity to prove to the jury that it is a minimally responsible defendant. And that's liable only for its share of damages under section to 1117. 2nd, the court wrongly decided that the city made a judicial admission that the Chicago Police Department's pursuit policy prohibited the Wilford pursuit. Now, why wouldn't that be an admission though? I know you don't probably don't want to start there, but why wouldn't it be? Thank you, your honor. A few reasons why. 1st, is that for testimony to give rise to a judicial admission, it must be unequivocal. And here, the testimony that gave rise to the purported judicial admission was Captain Ramirez's deposition testimony. And his testimony on the subject of whether the general order on pursuits prohibited the pursuit of a vehicle for DUI from an unmarked vehicle, the captain's testimony on that subject was not unequivocal. He testified repeatedly over the course of his deposition that, in fact, the officer's pursuit of Mr. Wilford complied with the pursuit policy. Now, the circuit court essentially ignored all of that testimony and instead found a judicial admission based on Captain Ramirez's answer to a question regarding the plain language of the general order. He was asked whether under the plain language pursuit for DUI from an unmarked vehicle is prohibited and Captain Ramirez's answer to that question was, strictly speaking, yes, but that answer did not begin to convey Captain Ramirez's full thoughts on the meaning of the general order. Let me ask you a question. Is the question asking a factual issue or a legal issue? Thank you, Your Honor. It's a legal issue. Why is it a legal issue? Yes, the plain language meaning of a Chicago Police Department general order is a legal question, not a factual one. And indeed, there are no conceivable facts that Captain Ramirez could have brought to bear in answering a question about the plain language meaning of the order. So, if it's a legal question, then what comes next? Since it's a legal issue and not a factual one, it's not capable of giving rise to a judicial admission. Okay. So, but that doesn't end the inquiry, does it? Because to me, the next question is, was there any prejudice? Yes, Your Honor. There certainly was in this case because plaintiff made it the major theme of her case that the city is liable here because the Wilford pursuit never should have started in the first place. And indeed, plaintiff was able to argue at trial to the jury quite accurately that the jury did not hear any evidence that the pursuit policy allowed the officers here to initiate the Wilford pursuit. So, the plaintiffs hit that theme over and over and over the course of the trial, and that is what caused prejudice to the city. I'd like to address one other reason why Captain Ramirez's deposition answer did not give rise to a judicial admission, which is that he prefaced his answer with strictly speaking, which indicated that he was talking about the meaning of the general order only in a limited and technical sense. That answer did not convey his full thoughts on the meaning of the order, as his other answers to other deposition questions showed. So, for all those reasons, the judicial admission decision was improper and the judicial admission prejudiced the city. Now, if I may, I'd like to address Section 211.17. By its terms, the statute applies to actions based on negligence, and it provides that a defendant who is less than 25% at fault is responsible only for its share of non-medical damages. Here, the circuit court thought that the statute does not apply to this case because plaintiff alleges willful and wanton conduct rather than simple negligence. But that interpretation is contrary to decisions by the Illinois Supreme Court and by this court. Those cases hold that the exact same term, actions based on negligence, as it appears in another provision of the Code of Civil Procedure, includes actions alleging unintentional willful and wanton conduct, as this one does. And this court should apply the same... Well, haven't the courts made a difference between reckless, willful, and wanton and intentional? Yes. And here, as I understood the verdict, it was just willful and wanton. The jury was never asked to distinguish whether it was intentional or reckless. That's correct, isn't it? That's correct. But there was no allegation in the case that these officers were intentionally willful and wanton, and the verdict forms did not give the jury the chance to make such a finding either. So the only type of willful and wanton conduct that's at issue here is the unintentional kind. And cases... Which is reckless, you're saying? Essentially, yeah. Yeah. Well, essentially, yes or no? I mean... Well, it's been characterized a few different ways. I've seen it characterized as like an aggravated form of diligence. But the key point is that all of these types of conduct are unintentional. And therefore, they're capable of being compared to each other, as is the case here. So this court in Stojkovic and the Inuit Supreme Court in Vincent have decided that the term actions based on negligence, as that term appears in the Code of Civil Procedure, includes all kinds of unintentional tortious conduct, including unintentional willful and wanton conduct. That same meaning to the term actions based on negligence should hold here. And therefore, Section 211.17 controls this case. Moreover, the circuit court's decision to take it upon itself to apportion fault between the city and the jury was erroneous as well. Before I go, it seems to me that the key question is whether Walford's liability was actually being determined in the same trial in which the jury would have allocated fault. What's your answer to that question? Well, it's our position that the jury should have allocated fault in the course of that proceeding. But why? I mean, if Walford obviously was dismissed and not sued by the plaintiff. However, before that, you made a cross-claim, right? That happened before, and the law says that, well, one position would be that the law says that the case against the cross-claim defendant continues despite the dismissal, correct? That's right. And the court issued it. Okay, go ahead. Now, the court issued an order expressly stating that when plaintiff dismissed her claim against Walford, the city's claim was to stand.  And Judge O'Brien said he would go in, first the jury would decide the issue with regard to the city, and then separately decide the issue with regard to Walford is the way I understood it. But the same jury. Same jury, yes. And the judge who heard the trial made a different determination. Do you still advocate what Judge O'Brien stated? Would that be the proper procedure? We accepted Judge O'Brien's proposal. That's not my question, do you accept it? Because if we agree with you, I mean, we don't want this to happen. We want to try to, let me ask another question before I get to that. Is this an issue of first impression, in your opinion? I believe so, Your Honor, in the sense that I'm not aware of another case that follows the same path that this one does. I think you're right, because the two of you, one of you would have told us so. So with that in mind, we want to see if we can resolve this so that it doesn't come up again. So that's why I'm asking you about, you said you were okay with what Judge O'Brien did. But is that, would you say under the law, both the Supreme Court and the appellate cases on this issue, that that is the proper procedure in a case similar to this? Where it's not a settlement, it's a, even if it wasn't, but it's not a settlement here. Sure, it's our position that under Section 211.17, the trier of fact has to do the apportionment. Now, whether that apportionment is- Let me just have you, Paul, clear for a second. Let me ask the first, what was Wolford's participation in this trial, defending? He did not personally participate. He was not present in the courtroom. The jury did hear portions of his discovery deposition in the course of the trial, that portions of his deposition were read to the jury at trial without, but Mr. Wolford was not personally present in the courtroom. So usually when there's no participation from a property defendant, generally, how would the jury be able to do that apportionment? For me, it seems more appropriate for the judge to do it, which is what happened here. Well, the jury would make that determination based on the facts of the case. And it's our position that the judge has no discretion to take over that fact-finding function for a couple of reasons. One is that the statute, Section 211.17, actually requires apportionment to be done by the trier of fact in the case. And in this case, the trier of fact was the jury and not the judge. And in addition to that, the city had a valid jury demand, and the circuit court had no discretion to ignore that demand and take on this fact-finding function on its own. So for all those reasons, the circuit court's own ad hoc 50-50 apportionment between the city and Wolford cannot stand. And the city is entitled to a new trial so that at a minimum, a jury may decide an apportionment of fault. Was there a hearing before the judge on the 50-50? There was no additional testimony taken. No, there was not. And for that, I could see. So the judges made that determination based upon the same thing I guess the jury would have done. Yes, it was based on the same record, but that procedure did not comport with the statute. Because you didn't get your jury trial, which the statute would have provided. Now, that goes to what the statute says, because the statute says that a third-party defendant, in other words. And that statute, as I understand the cases, is read by the Supreme Court of Illinois strictly. And then the question is, is Wolford a third-party defendant or was it a cross-defendant? Because that's what you called him at the time that you filed the cross-claim. What's your answer to that? Yeah, so we cite the case Edwards v. Fox for the public. The court looks to the substance of an action rather than the formalities such as around how an action is titled to determine whether it's a cross-claim or a third-party action. In Edwards, what started as a third-party action became, for all intents and purposes, a counterclaim. Because the case involving the third-party defendant was consolidated with another case where that same party was a plaintiff. Here, it's the same principle, just basically in the opposite direction, where when the city initially sued Wolford, he was already in the case by virtue of the plaintiff's claim against him. So the city stylized its action as a counterclaim. However, once the plaintiff dismissed her case against Wolford, the only action that kept Wolford in the case was the city's claim for contribution against him. And so, for that reason, the city's claim was, for all intents and purposes, a third-party action. And therefore, it came within the ambit of Section 211.17. And Wolford, therefore, had to be included in an apportionment default under the statute. Those are all the remarks I have prepared at this time. If I may reserve the rest of my time for rebuttal, unless there are any further questions at this point, I'd like to reserve the rest of my time for rebuttal. Okay, Mr. Collins, you have five minutes for rebuttal. Mr. Gibbs? May it please the court, counsel. This is not a case where the city of Chicago is a minimally responsible defendant. And I will take Justice Walker's advice and stay away from the facts, but the facts in this case were egregious in the way in which the city of Chicago began, continued, and failed to terminate this case. But that doesn't go to the issues before us, right? I mean, the jury found Wilford and Watten reckless. Therefore, I think the jury would agree with you. But we're not talking about that. That's not the issue before us. This is a very technical issue with regarding how the statute is used in this case and how it applies, correct? This appeal is, I just heard from counsel that it was all about them being wrongly denied a chance to prove that they were minimally responsible. And that just isn't the facts of this case. All right, but you're right, Your Honor. No, I mean, again, the facts, I don't disagree with your characterization of the fact. But the question becomes whether the court should have applied 1117. And as to that, I'll ask you the same question I asked your opponent was, was Wilford's liability actually being determined in the same trial? In which the jury allocated fault? I mean, Wilford was dismissed from your case, but it still remained in the case, is that correct? Not in the case that was heard by the jury. Only because of court's ruling. But, and that's what's at issue here. So the question is, should the jury have done the contributory part that the judge did on her own? And as to that, why not? If the statute says that it all should be done together, what, I think it's Harshman or something, a case which said everything should be done in one proceeding. Yeah, and Harshman really doesn't address this issue at all. Do you agree there's no, this is a case of first impression? Well, it's a case of first impression on certain issues, yes. Oh yeah, I'm saying every issue, yes. Yeah. Yeah, but this issue that we're talking about, which is probably the more important of the issues, it's a first impression, it seems to me. It is, because the factual and procedural posture is unique. And I think it's important to understand the procedural posture. And as your honor's aware, the contribution claim that the city brought against Mr. Wooford, who was an indigent non-participant in the case, was defaulted, and then it was severed. And pursuant to 735 ILCS 5-2-614B, the trial court had discretion to order a separate trial on the counterclaim. And that's exactly what Judge O'Brien, sitting in the presiding judge's room, determined, was that the plaintiff's case against the city to determine whether the city was willful and wanton and whether that was a cause of Mr. Lamb's death should proceed. And Judge O'Brien even said, maybe we won't have to go any further, city. Maybe you win the case. But if you don't, and the plaintiff prevails, then you move on to the separate contribution claim. But counsel said that was fine. There's no problem with that. The problem is the judge used, changed it, right? So our question is, should the judge have left it alone? Is that the law that Judge O'Brien got it right? I mean, the two judges did something different. One of them is right and one of them is wrong. Or are they both right? Are they both wrong? I don't know. You tell me. I believe they were both right. And here's why. Judge O'Brien contemplated exactly what happened here, which was plaintiff, go get your verdict. And if there's a verdict, then you decide what's next. And we raised with Judge O'Brien that we believe what would be next pursuant to the victim A versus Song case was that a prove-up would be conducted on the contribution claim. And the prove-up would be conducted, obviously, by the court. And Judge Hughes had heard all the same evidence that the jury had heard. And she then heard that evidence and applied it to the contribution claim. And I will just note that a contribution claim is an equitable remedy. You are not entitled to a jury on a contribution claim. And so it was entirely appropriate to take the defaulted defendant in the contribution claim, who, by the way, wasn't going to be present in front of the jury. No, I understand. But I don't understand. It may be inequitable, but maybe it's not. A little of both because the statute or the rule permits. It says it should go to the jury. I mean, contribution claims are heard by juries. They are, but that is not. So when you say. There are cases that say that that is not a constitutional right at all. But in Illinois, the rule says, there's case law, says also be done one-on-one proceeding before the trier of fact. That's what the law says. And the trier of fact here was the jury. And so you're saying that the rule is only that's unconstitutional, that rule? I don't think you're arguing that in your briefs. No, no, no, no, no, no. So we're not going there. So I'm really confused by your statement because the rule 604 or whatever, says that you can have this contributory decision by the trier of fact. So 2-1117 does have the words trier of fact in it. Right. And I believe that's what your honor is referencing. Yeah. Well, yeah, I was also thinking of the contributory rule. Yeah. Contribution. Those words are not there and it is an equitable determination of who bears the responsibility for the verdict. So it doesn't have to go to a jury. But there's kind of two things that I would like to address. One is because of the city's own affirmative move to default Mr. Wooford, there was nothing for the jury to decide. We see that every day in our practice where a default is entered against a defendant or a third-party defendant or some kind of party to a case. And that then moves to a prove up before the trial judge. The trial judge has absolute discretion, I believe. But that's not what... As to whether to go to a jury or have... To 1117 says something else.  Your case, we have to look at 1117. 1117 either applies or it doesn't.  And under the terms, it says it applies to any third-party defendant. So if Wooford is a third-party defendant, would you agree you lose? No. No? If he's a third-party defendant, how can you not? How can you win? 2-1117 doesn't apply to this case because this is not a case based on negligence. And the plain language of 2-1117... Well, again, let's go back to the case law. That was one of some of the questions I asked Mr. Collins. Courts have said it is a form of negligence as long as it's not intentional. Is that right? So... Is that the law? I told many cases... So I will answer your question, I promise, but it's going to take me a while to get there.  The statute 2-1117 is specific that it only applies to cases, quote, based on negligence. And in this case, our case against the city of Chicago was not based on negligence. It was based on willful and wanton conduct. And so by the plain language of that statute, 2-1117 could not apply. Now, if you look outside of the plain language of that statute, there's all sorts of arguments that are opened up, and that's where I will answer your question. But the reality is, is the plain language of 2-1117 says that this case, because it is based on willful and wanton conduct, 2-1117 doesn't have anything to do with it. And that is why a lot of this appeal is academic, because if 2-1117 doesn't apply, 90% of what the city is advancing on this appeal is irrelevant. And I believe that... I agree with your statement that that would happen if we agree with you. So my question to you, though, is, what's your best case that this is nothing to do with based on negligence? What's your best case that we come down finding that that language does not refer to the claim you brought? So our best case is actually Reedy. Reedy addresses the history of 2-1117. And it addresses the fact that 2-1117 was first passed in 1986 and then was amended in 1995. And then that amendment in 1995 was found unconstitutional in 1997 by the best case, which I'm sure the court is familiar with. And importantly, what happened in 1995 is the 2-1116, the statute right next to 2-1117, was amended to include the phrase, willful and wanton conduct. And the Reedy case talks about how, if you're going to look outside of the plain language of a statute, which again, I would urge this court not to, because I think the plain language is very clear. But if you are going to look outside the plain language of the statute, the history is important. And the fact that our legislature in 1995 added willful and wanton to 2-1116 and did not add it to 2-1117 is an indication of, number one, based on negligence, did not include willful and wanton when originally drafted in 1985 in either statute. And number two, the legislature did not want to include willful and wanton cases in 2-1117. If it had, it would have so amended. And Reedy goes through that whole history and talks about that in great detail. And I will just say that Reedy, of course, as a case of first impression, Reedy is a settlement case. This is a dismissal case. So there hasn't been a case on all fours with our case. And so this could be distinguished on that basis. And that's an important distinction. And if I could address that and then I'll come back to what we were discussing. Okay, that's fine. But I just want to say that in Reedy, the defendant was gone. Here, the defendant still had a leg in the case. So go ahead. Our view is that the defendant was gone in this case, too. He was dismissed. I guess, Mr. Gibbs, what you're arguing here is that that particular defendant was not defending at trial because he had already been defaulted, correct? Isn't that correct in here? That's correct. Because he was already defaulted, then there would be, the jury wouldn't even have the information that they need to assess that fault. That's correct. And it would be fundamentally unfair because the city actually advocated for them calling new witnesses and arguing in front of the jury on the contribution claim after the verdict had been rendered. But that claim was only against a defaulted defendant who obviously would not have any ability to defend himself. And we, as the plaintiffs, would have no standing to defend the contribution defendant. And so it all sort of falls apart. But I do want to come back to Justice Hyman's question because it's an important note that I have in my notes. The city talks about this Supreme Court case, Vincent v. Alden Park. And they think it stands for the proposition that the Supreme Court has ruled that the phrase based on negligence includes willful and wanton conduct in the statutes and nothing could be further from the truth. If the court looks to the note that's cited by the city at 241, ill second, 495, it's note one. Justice Carmeier is crystal clear in saying, as used in this provision, the punitive damages provision. And of course that makes sense because in a punitive damage provision, all you can deal with is willful and wanton. There can be no punitive damages for ordinary negligence. So in that, and he said specifically, as used in this provision, he could have said, as is commonly understood in our statutes, he could have said as the legal profession understands, but he didn't. He said in this provision. And that's a very, very, very important distinction because the city is saying that that phrase based on negligence always includes willful and wanton conduct. And it just does not. And that's important because if 2-1117 does not apply to this case because this is a case that is not based on negligence, this court absolutely should and must affirm the verdict in the lamb's favor. The only other possibility that the city wants to have happen is that the court would decide, number one, that 2-1117 applies. It does not. That two, the case should not have been severed. They've forfeited that argument. And even today, I believe said they don't have any issue with that. And so the case was severed. So then the second thing is the jury should have heard the contribution claim, but the jury can't hear it because that's fundamentally unfair when there's a defaulted contribution defendant. And then importantly, that this jury would have somehow determined something different than that which Judge Hughes, who heard all the same evidence, decided. And then I'm not sure what the city would have happen. If all those things were true, then the case would be, I guess, remanded for a trial on apportionment. But of course, if that were the case, the plaintiff can always settle with Mr. Wooford, who's been incarcerated until he got out on parole in December of 2025. And everyone agrees in this case that a settled defendant does not go on a verdict form, no matter what. And so it's a distinction without a difference to say that if a settled defendant doesn't go on a verdict form, a dismissed defendant should. That just makes no practical sense in the application in this case, really, or in any case. And that's why on behalf of the Lamb family, I respectfully request that this court affirm their verdict. And I'm happy to answer any other questions that the panel may have. I'd like to ask you about the other issue that was mentioned by Mr. Collins, having to do with the question of whether the testimony of the representative for the defendant was a factual issue or an opinion. And if it were, and usually my understanding is that if it's a question of law, then it's not a factual issue. So I'd like you to address that. Thank you. So Captain Ramirez was called as a 206A1 witness. So he was the individual designated by the city as the one that would speak to the city's policy on police pursuits. And I think that's important to note. He was not just a witness in the case, but he was their 206A1 witness. And so he was asked based upon the plain language of the city of Chicago's general order, whether on section three, operating unmarked vehicles, there was a prohibition on DUI. And he said, strictly speaking, yes. All right, but is that a legal, the question I'm asking, is that asking for a legal conclusion? And I think it's asking for a factual determination as the city of Chicago's person that knows the most about their policy. What does it say? But isn't it an interpret, if it's interpreting a rule, that would be a legal issue, interpreting a rule. I think because he's a police officer that is training other police officers, you know, who are not lawyers, on what this piece of paper means, that interpretation is a fact question. And it says, strictly speaking, this is what it says. I believe that to be an issue of fact. Let's go to, okay, but let's go to strictly speaking. As Mr. Collins said, he testified at very other different ways on this same issue. And when he says strictly speaking, yes, but that is not a confident yes, that has some wiggle room, right? And that's the problem because it's not supposed to have any wiggle room if it's a judicial admission. And that's where Judge Hughes time and time again in the record said to the city, listen, the judicial admission is very, very narrow. What he has said is that this piece of paper, strictly speaking on this paragraph says this, but there's a bunch of other paragraphs and there's a bunch of other rules and there's a bunch of other ways that you can present evidence to interpret this order. And the city of Chicago did not have an expert to talk about that and did not call a witness to talk about that. There was no offer of proof from Captain Ramirez other than the tendering of his discovery deposition. And importantly, the first witness in the case was Officer Mankiewicz. Officer Mankiewicz was driving the vehicle that chased Mr. Wooford. And I asked him, at the time that you turned your lights on, this is after Mr. Wooford had turned the wrong way down Albion off of Western. All that he had done was commit a petty traffic offense of driving the wrong way down a one-way street. And he said, yes. And I asked him, and that means that you are prohibited in an unmarked car from chasing if the most serious offense is a traffic offense, correct? And the answer, yes, sir. And I asked him, so the chase should never have started under the prohibitions in the general order. And the answer, yes, sir. He later on redirect was given an opportunity by the city's council to explain what he was thinking, why he thought it was okay. But he testified to the exact same topic. It was a violation of that paragraph. And so there was no prejudice in the judicial admission being admitted. If that was error, that was harmless error entirely. Could you talk for a minute about not calling this chase in? They didn't have the authority from anybody, right? That's absolutely correct. Every chase has to be called in. Well, under the rules that applied at that time. At that time, right. And so the reason for that is, and I went through this with Officer Mankiewicz. The reason for that is the policy envisions a scenario where the officers involved in the chase are involved in a chaotic or somewhat heightened situation and might not be thinking entirely clearly. And so that's why the order mandated that they must call in every chase. So that a supervisor. This is an unmarked car. And the rule is a little bit different for an unmarked car in a lot of places. But any chase has to be authorized by a supervisor. Is there, unless there's some imminent danger, like that minute. Marked or unmarked, they had to call this one in. All right. And there were three officers in that car. Is that correct? That's absolutely correct. And so Mr. Gibbs, you agree that courts can resolve contribution issues where the jury has already decided for the plaintiff. That's your argument, correct? And yes. And I believe that would have been entirely appropriate here and was entirely appropriate here. A, because there was a motion to sever that had been granted. And B, because there was a default against the contribution defendant. And therefore nothing for a jury to hear. And having a jury hear it would be fundamentally unfair because the defaulted defendant is not there to defend himself. And what's our standard of review on that issue? So the standard of review on the issue of whether the jury verdict form should have included an allocation of fault between the city and Mr. Wooford is an abuse of discretion standard. And once that determination is made, there need not be any further analyses. If the court were to determine that this verdict form was appropriate and the court did not abuse its discretion in tendering the jury this verdict form, the appeal is over. And if you were to get into a analysis, which again, we don't believe is needed, but if the court were to get into an analysis of the application of 2-1117, the case law is a little bit less than clear on whether that would be an abuse of discretion standard or a de novo standard for the court to do statutory construction and interpretation. But it's absolutely crystal clear that this is a verdict form question. This is a question of, was this jury properly instructed on their verdict form? And that is just a classic abuse of discretion standard. I hope that answers your question. It does. Thank you. You're out of time. Mr. Collins, you have five minutes for rebuttal. Thank you. Just a couple of points, Your Honor. First, regarding the effect of Mr. Wolford's default. I believe Mr. Gibbs said that upon entry of the default order, there was nothing left for the jury to decide, but that's not the case because it had yet to be decided to what extent was Mr. Wolford culpable in this matter. Moreover, the fact that Mr. Wolford defaulted cannot be construed to deprive the city of its right under Section 211.17 to have the trier of fact, in other words, the jury, decide apportionment of fault in this case. But his argument is that 1117 doesn't apply. So if 1117 applies, you win. If it doesn't apply, he wins. So your response kind of circular, it seems to me. Well, yes. So obviously it is our position that 1117 does apply to this case because this case for purposes of the statute is an action based on negligence. Mr. Gibbs discussed kind of the legislative history of another provision, Section 211.16, in that brief window of time when that statute before it was struck down in the best decision. In that time when the statute expressly referenced Wilford-Wanton conduct, Section 211.17 likewise incorporated Section 211.16's definition of fault, which included Wilford-Wanton conduct. So even then, as now, Section 211.17 includes Wilford-Wanton conduct. Well, what's your response to Vincent? Well, both Vincent and Stojkovic apply a statutory interpretation to the meaning of the term action based on negligence. And in Stojkovic in particular, the court explained that in light of the Illinois Supreme Court's decisions in Ziarko and Poole, which hold that one party's unintentional Wilford-Wanton conduct can be compared against another party's negligence, the term action based on negligence, as it appears in the codiciple procedure, should be construed to include all these different kinds of unintentional tortious conduct. And indeed, in light of those clear holdings in Stojkovic and in Vincent, there was no need to amend Section 211.17 to provide for an express inclusion of Wilford-Wanton conduct, because the term action based on negligence already included that type of conduct. Mr. Gibbs, also on the judicial admission piece, Mr. Gibbs stated that the judicial admission was narrow, but that's not how it was applied at trial, because the court relied on the purported judicial admission to bar Officer Minkovic from even testifying as to his understanding of the general order and whether it allowed him to pursue for a DUI from an unmarked vehicle. So because of that, the effect of the general order was quite broad, and it barred the city from presenting accurately Captain Ramirez's testimony that this pursuit actually did comply with the general order. That's all I have. If the court has no further questions, we ask that the judgment be reversed. Thank you. Hey, Mr. Collins, Mr. Gibbs, thank you both for your excellent arguments today. We appreciate excellence, and you both gave us that. So thank you. Thank you.